## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

| | |
|---|---|
| **CARY J. MEER,** | **:** |
| | **:** |
|     **Chevy Chase, MD** | **:** |
| | **:** |
|     **Plaintiff,** | **:**  **Case No.**  8:22-cv-00193 |
| | **:** |
| **v.** | **:**  _____ |
| | **:** |
| **UNUM LIFE INSURANCE COMPANY** | **:** |
| **OF AMERICA** | **:** |
| | **:** |
|     **Portland, ME** | **:** |
| | **:** |
|     **Defendant.** | **:** |
| | **:** |
| _____ | **:** |

## COMPLAINT

Now comes the Plaintiff, CARY J. MEER, by and through her undersigned counsel, and states her complaint against the Defendant, UNUM LIFE INSURANCE COMPANY OF AMERICA ("Unum"), as follows:

## Nature of the Action

1.    This action involves a claim for disability benefits and other relief under a group insurance policy identified by policy number 210478 012 (the "Policy"), that Unum issued to the Plaintiff's former employer, K&L Gates, LLP

("KLG").  Subject to its specific terms, the Policy provides disability insurance coverage to eligible groups, including employees and equity partners of KLG who participate in coverage under the Policy.

2.     The Policy relates to an employee welfare benefit plan established and maintained by KLG (the "Plan"), as defined by ERISA, 29 U.S.C. § 1002(1).

3.     The Policy underwritten by Unum funds benefits payable under that Plan.

4.     Benefit claims under the Policy are governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*

5.     The ERISA statute, specifically 29 U.S.C. § 1133, provides a mechanism for administrative or internal appeals of benefit denials.  The Plaintiff has exhausted those administrative remedies.

6.     The Plaintiff now brings this action to recover benefits under the Policy pursuant to 29 U.S.C. § 1132(a)(1)(B).

**Jurisdiction and Venue**

7.     The Court's subject matter jurisdiction over these claims is based upon ERISA, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1331.

8.     The Plaintiff has continuously resided in the state and district of Maryland since on and before the time her claims accrued under the Policy.  The breaches of the Policy alleged by the Plaintiff herein occurred within this district.

9.     This Court has personal jurisdiction over Unum and venue is proper in this Court, pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

## The Parties

10.     The Plaintiff is an attorney who worked and served as an equity partner of KLG.  KLG is a large, international law firm.

11.     The Plaintiff graduated from Harvard Law School in 1982 with a J.D. *cum laude*.

12.     The Plaintiff began working as an attorney for KLG in 1986 and became an equity partner in that law firm in 1992.

13.     As an equity partner for KLG, the Plaintiff was a "participant" under the Plan established and maintained by KLG as contemplated by 29 U.S.C. § 1002(7).

14.     As an equity partner for KLG, the Plaintiff was eligible for coverage under the Policy.

15.    The Plaintiff paid monthly premiums for her coverage under the Policy.   KLG withheld those premiums from the Plaintiff's compensation and remitted them to Unum.

16.    Unum funds the benefits payable under the Policy.

17.    Unum also evaluated and made the decisions as to whether to approve or deny the Plaintiff's claim for benefits under the Policy.

18.    At all times relevant to this claim, Unum acted under a structural and financial conflict of interest based on its dual roles as insurer and evaluator of claims under the Policy.

19.    Unum's decision to deny the Plaintiff's claims under the Policy was influenced by its conflict of interest.

**Factual Allegations**

20.    A certificate of coverage for the Policy was delivered to the Plaintiff in the state of Maryland.

21.    The Policy was reissued or renewed at least one time after October 1, 2011.

22.    A certificate of coverage for the Policy was issued or re-issued in December 2016.

23.    Unum increased the premiums charged to the Plaintiff for coverage under the Policy on at least one occasion after October 1, 2011.

24.    Subject to its specific terms, the Policy provides for payment of monthly disability income benefits to covered employees and partners of KLG who become "disabled" as defined by the Policy and remain disabled after satisfying a 180-day benefit elimination period.

25.    The Policy defines "disability" as follows:

"You are disabled when Unum determines that:
-    you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and
-    you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.

You must be under the regular care of a physician in order to be considered disabled.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice.  Unum will pay for this examination.  We can require an examination as often as it is reasonable to do so.  We may also require you to be interviewed by an authorized Unum Representative."

26.    For attorneys, the Policy defines "regular occupation" as "your specialty in practice of law which you are routinely performing when your disability begins."

27.     The Plaintiff's field of specialty in the practice of law included private funds and investment management law.

28.     On December 24, 2018, the Plaintiff began experiencing an acute onset of severe and debilitating head pain.

29.     On January 2, 2019, a physician treating the Plaintiff for her head pain ordered an MRI.

30.     On January 8, 2019, the Plaintiff underwent a brain MRI and computer tomography angiography showing she had a ruptured cerebral aneurysm with subarachnoid hemorrhage.

31.     On January 9, 2019, the Plaintiff was transferred to Johns Hopkins Bayview Medical Center where she underwent diagnostic cerebral angiogram that revealed a complex anterior communicating artery aneurysm with a superiorly projecting lobule as well as an oblong anteriorly projecting lobule presumed to be the rupture site, in the presence of three A2 vessels.

32.     On January 9, 2019, the Plaintiff underwent brain surgery – specifically, a right anterior craniotomy with microsurgical clipping of the anterior communicating artery aneurysm.

33.     Later CT scans show that the Plaintiff has post-surgical encephalomalacia in the right frontal lobe and right temporal lobe of the Plaintiff's brain.

34.     Encephalomalacia refers to the softening or loss of brain tissue.

35.     The Plaintiff suffered permanent injury and damage to her brain.

36.     The Plaintiff's regular occupation at the time her illness began was that of a law firm equity partner practicing in the specialized field of private funds and investment management law for a large, international law firm.

37.     The material and substantial duties of the Plaintiff's regular occupation included developing and maintaining client business.  These duties involved significant business travel and personal client attention.

38.     The material and substantial duties of the Plaintiff's regular occupation included performing complex legal work such as structuring and organizing private funds (which consist of private equity funds, hedge funds and funds of funds) and providing advice to clients on legal compliance with the Investment Advisers Act of 1940 and the Commodity Exchange Act.

39.     The material and substantial duties of the Plaintiff's regular occupation included reviewing and revising lengthy, complex legal documents such as private placement memoranda, subscription agreements and operating agreements.  These activities involve extensive periods of precise mental focus, analysis, rapid mental recall, and cognitive flexibility.

40.    The material and substantial duties of the Plaintiff's regular occupation also included supervising and managing other attorneys in her same specialty.

41.    The material and substantial duties of the Plaintiff's regular occupation require the ability to perform her duties on a full-time basis.

42.    Since December 24, 2018, the Plaintiff has been unable to perform the material and substantial duties of her regular occupation due to the impairments and symptoms caused by her sickness which include the sequela of her above-described ruptured brain aneurysm and related treatment.

43.    At the time she became unable to perform the substantial and material duties of her regular occupation, and at all other times relevant to this claim, the Plaintiff was covered by the Policy.

44.    The Plaintiff has incurred a loss of more than 20% of her indexed monthly earnings due to her sickness.

45.    The Plaintiff has been under the regular care of a "physician" for her sickness as that term is defined under the Policy.

46.    Since December 24, 2018, the Plaintiff has continuously met the Policy's definition of "disability."

47.    The Plaintiff's disabling symptoms and impairments include head pain, fatigue, cognitive decline including decreased memory, mental processing

speed, and sustained concentration, and physical impairments including but not limited to impaired manual dexterity and decreased physical stamina. These symptoms and impairments all relate to her above-described sickness.

48.    The Policy includes a 180-day elimination period during which a covered individual must be disabled before benefits begin to accrue.

49.    KLG established and funded a short-term disability plan to provide benefits to its disabled employees and partners during the Policy's elimination period.

50.    Unum evaluated and administered claims of disability made under KLG's short-term disability plan.

51.    The Plaintiff made a claim for short-term disability benefits.

52.    Unum approved the Plaintiff's short-term disability claim based on a disability onset date of December 24, 2018.

53.    The Plaintiff also made a timely claim for long-term disability benefits under the Policy issued by Unum.

54.    Unum initially determined that the Plaintiff met the Policy's definition of disability and approved her benefits under the Policy beginning June 22, 2019.

55.    The Plaintiff's symptoms and impairments have not improved since that time.

56.     A vocational representative for Unum, Mary E. Cloutier, performed a vocational assessment of the Plaintiff's regular occupation reflected in a Unum claim notation dated August 7, 2019, in which she concluded "it can require up to frequent travel and physical and mental stamina for working extended hours" and "[c]ognitive demands include extremely high general learning ability (associated with memory), verbal aptitude and high clerical perception and numerical aptitude; independent planning, focus and concentration, dealing with people, performing a variety of duties, influencing others in their opinions, attitudes and judgments, and directing, controlling or planning activities of others and meeting deadlines."

57.     According to an August 21, 2019, notation in Unum's claim record, one of the Plaintiff's treating physicians, Sandra J. Ginsberg, M.D., advised a Unum in-house staff physician that the Plaintiff continued to suffer post-craniotomy head pain and fatigue and felt "foggy" which could limit quick decision-making needed for her work activity.

58.     On October 24, 2019, the Plaintiff advised a Unum representative that she continued to experience head pain and difficulty concentrating.

59.     On December 10, 2019, Unum sent the Plaintiff a letter in which it asserted that she no longer met the Policy's disability definition.

60.     Unum has not paid benefits to the Plaintiff for the period beyond December 10, 2019.

61.     The Plaintiff submitted a timely appeal of Unum's decision as provided under the ERISA regulations and terms of the Policy.

62.     The Plaintiff submitted evidence to Unum in connection with her appeal showing that she continued to meet the Policy's definition of disability.

63.     In support of her appeal to Unum, one of the Plaintiff's treating physicians, Sandra J. Ginsberg, M.D., provided Unum with a February 14, 2020 Attending Physician Statement in which she stated, among other things, that the Plaintiff "cannot concentrate long enough to perform her job. She also cannot travel alone for work."

64.     The Plaintiff also submitted a January 15, 2020 letter from a treating provider at the Georgetown Headache Center, Laura Xanders, CRNP, who endorsed the Plaintiff's reports of persistent "post-surgical headache" with "daily dull constant pain" and "intermittent exacerbations to severe about 3 times a day" with "minimal improvement" from medication management. Xanders also endorsed activity restrictions due to the Plaintiff's post-craniotomy headaches that included a "maximum of 2 hours a day of work to allow her to complete her workload while navigating unpredictable exacerbations of pain often triggered by prolonged cognitive activity" and that she be allowed to perform those activities from home with "access to a dark quiet place to lie down during these unpredictable activities."

65.    The Plaintiff also submitted a report from a neuropsychologist, Rick Parente, Ph.D., who performed a series of objective cognitive tests on the Plaintiff on July 8, 2020.

66.    Among his findings, Dr. Parente reported that the Plaintiff scored "below average" in tests of memory which were "substantially lower" than expected indicating "problems with memory" likely to cause her "difficulty remembering complex information that she would have to process on the job."

67.    Dr. Parente also identified "relatively slow processing speed" which he opined would make it "difficult for her to function at competitive speeds and accuracy."

68.    The Plaintiff passed multiple validity screens during this cognitive testing. Dr. Parente determined her test results were a valid reflection of her cognitive functioning.

69.    Dr. Parente concluded the Plaintiff "will not be able to return to her former job.  The work requires not only superior intellectual functioning but also superior memory and processing speed."

70.    In connection with her appeal, the Plaintiff also submitted a report from a board-certified neurologist, Michael Batipps, M.D., who performed an in-person neurological independent medical evaluation of the Plaintiff on November 16, 2020.

71.   Dr. Batipps reported that the Plaintiff's post-operative CT scans showed "presence and persistence of the right frontal and right temporal lobe encephalomalacia.  Also noted was a right basal ganglia (right caudate nucleus and right lenticular nucleus) encephalomalacia/probable infarction.  This constituted neuroradiological documentation of significant brain injury related to aneurysmal subarachnoid hemorrhage and postoperative changes."

72.   Dr. Batipps found that the Plaintiff "had significant ischemic injury to the brain" with "well-documented areas of encephalomalacia, which by definition indicates brain injury. This involves the right frontal lobe and the right temporal lobe, which are areas important for memory and other neurocognitive function."

73.   Dr. Batipps reviewed the reported results of the neurocognitive testing by Dr. Parente and opined that they showed fundamental neurocognitive dysfunction.

74.   Dr. Batipps opined that "[b]ecause of the well-documented chronic neurocognitive dysfunction, this patient will not be able to return to work as an attorney at a high level. She will not be able to resume her previous career as an attorney."

75.   In connection with her appeal to Unum, the Plaintiff also submitted a September 8, 2020 report from an experienced vocational rehabilitation counselor and vocational consultant, Larry A. Underwood, M.S., CRC, who analyzed the

requirements of the Plaintiff's legal occupation, compared them to her performance on the neurocognitive testing by Dr. Parente, and concluded she is unable to perform the material and substantial duties of her occupation on a full-time or part-time basis due to her condition and current cognitive functioning.

76.    The Plaintiff also provided Unum with the report of a two-day functional capacity evaluation that concluded, from a physical standpoint, the Plaintiff was unable to perform any work activity on a "sustainable" basis over an 8-hour workday and had impairments in fine motor activity and manual dexterity that would impede her ability to perform tasks that require manual dexterity or repetitive use of a keyboard and mouse.

77.    After receiving the Plaintiff's supporting evidence on appeal, Unum engaged Dane Street, a company Unum regularly uses to arrange and provide medical and psychological record reviews and reports for disability claims.

78.    Dane Street derives a significant amount of revenue from arranging medical and psychiatric record reviews for Unum using Dane Street's panel of physicians and psychologists.

79.    Through its arrangement with Dane Street, Unum obtained a consulting report from Edan Critchfield, Psy.D., dated April 26, 2021.

80.    Dr. Critchfield agreed that the scores on the cognitive testing by Dr. Parente were "likely an accurate reflection of [the Plaintiff's] ability" and showed

"notable decline from her premorbid levels among measures that require cognitive speed/efficiency and memory". However, Dr. Critchfield argued in his report that the Plaintiff's decline in these cognitive areas "would not automatically" preclude her from returning to work, but "may require additional use of compensatory aids or additional effort on her part to operate at her premorbid level."

81.    Dr. Critchfield did not identify or specify any "compensatory aids" that would enable the Plaintiff to overcome her decline in memory and processing speed to allow her to perform her legal specialty.

82.    Unum did not advise Dr. Critchfield of the Plaintiff's specialty in the practice of law or her specific occupational duties in that legal specialty, nor did Unum provide Dr. Critchfield or Dane Street with its internal vocational assessment by Cloutier addressing the "extremely high" cognitive demands of that occupation.

83.    Dane Street sent Unum a copy of Critchfield's report by email on April 26, 2021 with a message that included the following statement: "we appreciate your business and look forward to assisting you again soon."

84.    Unum provided the Plaintiff's attorney representative with a copy of Dr. Critchfield's report eleven days later on May 6, 2021.

85.    Unum did not provide Plaintiff or her attorney representative with a copy of Dr. Critchfield's report "as soon as possible" as required by the ERISA regulations set forth in 29 C.F.R. §2560.503-1(h)(4).

86.    An in-house physician working for Unum, Jacqueline Crawford, M.D., also prepared an internal report for Unum on May 3, 2021 in which she contended that no functional work impairments were supported beyond December 11, 2019.  Dr. Crawford's reported opinions were based on a selective review and misrepresentation of the records including the functional capacity evaluation. Unum provided the Plaintiff with a copy of Dr. Crawford's report on May 6, 2021.

87.    Unum also provided the Plaintiff with a May 5, 2021 report from a Unum employee, Kelly Marsiano, M.Ed., CRC., who performs vocational assessments at Unum.  While acknowledging that the cognitive demands of the Plaintiff's regular occupation included "[e]xtremely high general learning ability (associated with memory), verbal aptitude and high clerical perception and numerical aptitude; independent planning, focus and concentration, dealing with people, performing a variety of duties, influencing others in their opinions, attitudes and judgments, and directing, controlling or planning activities of others and meeting deadlines," Ms. Marsiano performed no independent vocational analysis or assessment of whether the Plaintiff's documented limitations would allow her to perform those occupational requirements. Instead, Ms. Marsiano wrote

"the insured's capacity for the material and substantial duties is deferred to the reviews provided by neurological medical specialists Drs. Crawford and Critchfield."

88.    Neither Dr. Crawford nor Dr. Critchfield has any qualifications or training in performing vocational assessments.

89.    Dr. Crawford and Dr. Critchfield did not reasonably consider the material and substantial duties of the Plaintiff's regular occupation when rendering their conclusions in the claim.

90.    The Plaintiff sent Unum an addendum report from Dr. Parente dated June 17, 2021, in which Dr. Parente responded to Dr. Critchfield's assessments.  In his addendum report, Dr. Parente explained that the Plaintiff's "memory limitations have adversely affected her processing speed. However, her job requires superior memory and rapid processing speed.  She is therefore unable to process information at a level sufficient to meet the demands of her job."  Dr. Parente also responded that he personally observed the Plaintiff as she "struggled while performing the various tests procedures.  She also rapidly fatigued. Given these test results and observations of [the Plaintiff] it is difficult for me to accept Dr. Critchfield's conclusion that [the Plaintiff] should be able to return to her former job if she simply tried harder."

91.     The Plaintiff also provided Unum with a June 16, 2021 report from an independent neuropsychologist, Damond Logsdon, Ph.D., who reviewed the Plaintiff's medical records and above-referenced reports.

92.     Dr. Logsdon endorsed the findings in Dr. Parente's July 8, 2020 neuropsychological report and further explained that based on the reported cognitive test scores, "[e]ssentially, in the cognitive domains that [Unum's in-house physician] Dr. Crawford describes as 'most relevant to the insured's vocational duties,' Mrs. Meer his [sic] functioning in the bottom quintile of the nation….Her declaration of disability is consistent with the empirical data regarding functional outcome related to neurological functioning." Dr. Logsdon cited to a published study concluding: "Patients with subarachnoid hemorrhage (SAH) due to ruptured aneurysms of the anterior communicating artery (ACoA) have historically been observed to suffer from a poor neuropsychological outcome."

93.     Dr. Logsdon also cited to diagnostic evidence of post-operative encephalomalacia in the Plaintiff's right frontal lobe which "is implicated in decision-making, as well as memory retrieval."

94.     Dr. Critchfield then prepared a July 19, 2021 report for Unum in which he asserted he had read the reports from Drs. Parente and Logsdon.  Dr. Critchfield did not address or dispute the new information, studies cited or

arguments raised by Drs. Parente and Logsdon, except to write: "Overall, the reviewer appreciates Drs. Parente and Logsdon for their responses. However, their responses did not include any new or additional test data assessing the claimant [sic] cognitive functioning. Thus, the additional information provided does not change my prior neuropsychological opinion."

95.     Unum denied the Plaintiff's appeal and communicated that decision to the Plaintiff's attorney representative by letter dated July 28, 2021.

96.     Unum's decision was not supported by substantial evidence.

97.     Unum's decision was not the result of a deliberate and principled reasoning process.

98.     Unum failed to "ensure that all claims and appeals for disability benefits are adjudicated in a manner designed to ensure the independence and impartiality of persons involved in making the decision" on appeal in violation of the applicable ERISA regulations, 29 C.F.R. § 2560.503-1(b) (7).


## COUNT I

## (Claim for benefits under Policy/Plan governed by ERISA)


99.     The Plaintiff realleges and incorporates by reference paragraphs 1-98 of this Complaint as if set forth verbatim herein.

100.   The evidence that the Plaintiff submitted to Unum during the claim and appeal demonstrates that she has met the Policy's definition of "Disabled" on a continuous basis since on or before the date she stopped working and has satisfied all conditions set forth in the Policy and Plan for receiving benefits.

101.   Unum's decision to deny the Plaintiff's disability benefit claim was wrong, unreasonable, arbitrary, and capricious.

102.   Unum failed to establish or follow reasonable claims handling practices in connection with its review of the Plaintiff's claim.

103.   Pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B), the Plaintiff is entitled to recover benefits under the Policy and Plan from Unum for the period beginning December 11, 2019 or such earlier date when Unum stopped paying her benefits.

104.   Based on her monthly earnings prior to onset of her disability, the Plaintiff is entitled to receive the maximum monthly benefit of $30,000 per month under the terms of the Policy.

105.   The Plaintiff is entitled to recover benefits accruing through the date of judgment and will be entitled to continue receiving such benefits into the future.

106.   The Plaintiff is entitled to recover interest accruing on the aforesaid benefits.

## COUNT II

### (Award of attorneys' fees against the Defendant)

107.   The Plaintiff hereby repeats and realleges the allegations contained in each of the preceding paragraphs of this complaint as if set forth verbatim herein.

108.   The Plaintiff has retained counsel to represent her in this matter and is entitled to an award of costs, including reasonable attorneys' fees against Unum pursuant to ERISA, 29 U.S.C. § 1132(g)(1).

WHEREFORE, the Plaintiff, prays for relief in the following forms:

(a)   Against UNUM LIFE INSURANCE COMPANY OF AMERICA, an award of disability benefits under the Policy in the amount of $30,000 per month for the period beginning December 11, 2019 through the date of judgment, plus pre-judgment interest accruing on all principal sums to which she is entitled;

(b)   Against UNUM LIFE INSURANCE COMPANY OF AMERICA, an award of attorneys' fees, litigation expenses and costs; and

(c)   That the Plaintiff be awarded such additional and further legal and equitable relief as the Court deems just and proper.

Respectfully submitted this 26th day of January, 2022.

RICHARD D. CARTER, LLC

_____/s/_____
Richard D. Carter
Federal Bar # 07484
Attorney for Plaintiff
416 Jefferson Street
Annapolis, MD 21403
(410) 268-2317 (phone)
(703) 542-1273 (fax)
rcarter@richcarterlaw.com